## Case No. 14,976.

UNITED STATES v. DODGE et al.

[1 Tex. Law J. 47.]

District Court, W. D. Texas. Oct. 3, 1877.

CIVIL RIGHTS — RAILWAY PASSENGERS — MASTER AND SERVANT.

[1. A railway employé who denies to a female passenger having a first-class ticket a right to ride in the only car in the train appropriated for the accommodation of ladies alone, solely because she is a person of African descent, is guilty, under the civil rights law of March 1, 1875 (18 Stat. 335), whether he acts under the instructions of his employer or not. If he acts under the instructions of superior officers of the railway company, they also are guilty under the law.]

[2. If there are two cars, equally fit and appropriate, in all respects, for the use of white female passengers as well as colored female passengers, then there is no offence, under the law in denying a colored female passenger entrance to one, and requiring her to ride in the other.]

DUVAL, District Judge (charging jury). The information filed in this case charges that W. E. Dodge, as president, W. R. Baker, as vice president, and J. Durand, as superintendent, of the Houston & Texas Central Railway Company, together with John Burdisch, an employé of said company, being in control and managing the cars of said road, did on the 26th of April, 1876, with an unlawful common intent and purpose, deny to one Milly Anderson admission into a car intended and provided for the transportation of female passengers, for the sole reason that she was a person of African descent, contrary to the act of congress of March 1, 1875, entitled, "An act to protect all citizens in their civil and legal rights." The act in question, so far as it bears upon the present case, provides "that all persons within the jurisdiction of the United States shall be entitled to the full and equal enjoyment of the accommodations, advantages, facilities and privileges of public conveyances on land or water," etc., "subject only to the conditions and limitations established by law, and applicable alike to citizens of every race and color, regardless of any previous condition of servitude." The act then goes on to denounce a penalty upon any person who shall violate this provision. Although the passage of this act, including the provision just read, was no doubt suggested by the condition of the late slave race of the Southern states, who had afterwards been made citizens of the United States, yet it is not confined in its operations to them alone. It extends to the white race, also, and embraces every person who is a citizen of the United States. One of the most valuable rights which every citizen of the United States enjoys is the right of passing from one place in the Union to the other, either for purposes of business or pleasure. To enable him to enjoy this liberty of locomotion, the incidental right exists, both by common and statute law, that he or she shall be conveyed on and over the great public lines of transportation which traverse the country by land or water. These lines of transportation, whether they consist of railroads, steamboats, or stages, are known to the law as common carriers. They owe to the public at large a general duty, independent of any contract in the particular case. The law imposes upon them the duty of transporting every citizen who pays the fare demanded to some designated point, and of giving him or her full and equal accommodation, convenience, and comfort, as is accorded to other passengers, male and female, who pay a like fare. This right of the citizen, and this duty of the common carrier, is recognized and exists by the common law of the land, and it is only to protect this right, and enforce this duty, that congress passed the provision of law which I read to you. Persons who refuse to conform to reasonable regulations on the part of the carrier, or who, for good reason, are not fit associates for other passengers, as, for instance, those who are drunk, disorderly, indecent, or offensive in their conduct, or who have contagious diseases, and the like, may properly be refused passage. But, with these and perhaps other like exceptions, every citizen of the United States, male or female, native born or naturalized, white or black,

who pays to the carrier the fare demanded for the best accommodations, is entitled to the best provided for the different sexes; and no discrimination, as against the one, in favor of the other, can be legally made, provided they are decent in person and inoffensive in conduct. Mere race or color will not justify any such discrimination. The officers or employés of an incorporated railroad company are presumed, in the absence of proof to the contrary, to do their duty,—to act according to the instructions given them by their principal. But where an officer or employé of such company denies to a citizen of the United States admission into and passage upon a railroad car, to which such citizen is legally entitled (there being room for him or her to sit therein), then such officer or employé would be liable to a prosecution like the present, whether he acted under the instructions of his principal or not.

If the jury believe, from all the evidence in this case, that Milly Anderson, on the occasion referred to in the information, had purchased a first-class ticket, entitling her to a seat in a car of the Houston & Texas Central Railway Company, destined and appropriated for the accommodation of ladies alone, and there was but one such car, and, on presenting such ticket to the defendant Burdisch, she was by him denied admittance therein, solely because she was a person of African descent, then he would be guilty under the law, whether he acted under the instructions of his principal or not; and, furthermore, if the jury believe from the evidence that Burdisch, under such circumstances, acted under the authority and instructions of the other defendants, Dodge, Baker, and Durand, then the said defendants would be guilty; otherwise, they would not. But if the jury believe from the evidence that there were two cars on this occasion, and that they were equally used and appropriated for the carriage of ladies and gentlemen who had first-class tickets, without distinction of race or color, and that they afforded the same advantages, comforts, conveniences, and enjoyments; and if they further believe that under such circumstances the defendant Burdisch, while denying Milly Anderson entrance into one, gave her passage in the other, then he would not be liable to this prosecution, and the jury should return a verdict of not guilty, generally, as to the defendants. But in such case the jury should be fully satisfied from the evidence that the car in which passage was offered was in fact, in all respects, equal to the other, and was as fit and appropriate at that time for white female citizens as for colored female citizens. If there exists on the part of the jury, or any of them, any prejudice for or against the Houston & Texas Central Railroad Company, or for or against colored citizens, I beg that it will be discarded on this occasion, and that under the law as I have given it, and the evidence before them, this jury will determine the guilt or innocence of the defendants just as they would if the denial of rights charged in the information had been in reference to a white female citizen, instead of a colored one.